UNITED STATES *v.* UNION PACIFIC RAILWAY COMPANY.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 188. Argued December 2, 1897. — Decided December 13, 1897.

The questions propounded in the certificate in this case do not present distinct points or propositions of law, clearly stated, so that each can be distinctly answered, without regard to the other issues of law involved,

and they obviously bring the whole case up for consideration; and as to answer them would require this court to consider the several matters thus pressed upon its attention, to pass upon questions of law not specifically propounded, and to dispose of the whole case, it is held, referring to previous decisions, that the certificate is insufficient under the statute.

THIS was a suit brought by the United States in the Circuit Court of the United States for the District of Kansas against the Union Pacific Railway Company and its receivers, as directed by the act of July 13, 1892, c. 164, 27 Stat. 120, 126, to recover certain amounts "found by the Department of the Interior to be due from said railroad company, its successors or assigns, under the last paragraph of the second article of the treaty with the Delaware Tribe of Indians of May thirtieth, eighteen hundred and sixty, and under the concluding clause of the third article of said treaty, and for damage done the said Indians in the taking and destruction of the property by said railroad company, which sums when recovered shall be used to reimburse the United States for the sum appropriated in the foregoing paragraph."

That sum was $39,675.16, of which $10,715.75 was to be paid to individual members of the Delaware Tribe for improvements on lands sold to the Leavenworth Company, and $28,959.41 was to be paid to individual members of the tribe for right of way through their allotted lands.

The first count of the petition alleged that in the year 1831, and for a long time prior thereto, the United States were the owners in fee simple of all the lands lying north of the Kansas and west of the Missouri rivers, in the then Territory of Kansas, and that by the terms of the treaty made between the United States and the Delaware Indians, proclaimed March 24, 1831, the United States conveyed and secured to that Nation, as a permanent home, a certain tract, describing it, with an outlet; that afterwards, in the year 1854, by the terms of another treaty, the Nation ceded to the United States all their right, title and interest in and to their country lying west of the State of Missouri, and situate in the fork of the Missouri and Kansas rivers, and also their right and interest in the outlet, with certain designated exceptions.

It · was further averred that articles eleven and twelve of the latter treaty provided that the country reserved for the permanent home of the Delawares might on request be surveyed and allotted ; and that roads and highways laid out by authority of law should have a right of way through the reservation ; " and railroad companies, when the lines of their roads necessarily pass through the said reservation, shall have the right of way, on payment of a just compensation therefor in money " ; that afterwards the Delawares signified their wish that a portion of the lands reserved for their home might be divided and allotted ; and thereupon, by the terms of a treaty entered into May 30, 1860, it was provided, among other things, that a portion of the reservation should be surveyed and allotted as stated, and by the last clause of article two thereof, that " the improvements of the Indians residing on the lands to be sold shall be valued by the United States, and the individual owners thereof shall receive the amount realized from the sale of the same, to be expended in building other improvements for them on the lands retained." By article three it was provided that as to the remaining lands, after the tracts in severalty and those for special objects named in the treaty had been selected and set apart, the Leavenworth, Pawnee and Western Railroad Company, a Kansas corporation, should have the prior right of purchase upon the payment into the United States Treasury, which payment should be made within six months after the quantity of said land was ascertained, in gold or silver coin, of such a sum as three commissioners, to be appointed by the Secretary of the Interior, should appraise to be the value, and providing that such value should not be placed below the value of one dollar and twenty-five cents per acre, exclusive of the cost of survey.

That, upon payment, a patent should be issued directly to the company ; that the United States would accept the trust imposed on them and apply the money resulting from such disposition of the lands in the manner prescribed by the treaty of 1854 ; and it was " also agreed that said railroad company shall have the perpetual right of way over any por-

tion of the lands allotted to the Delawares in severalty, on the payment of. a just compensation therefor, in money, to the respective parties whose lands are crossed by the line of railroad."

It was then alleged that by the terms of the treaty the United States became, and were the trustees of the Delawares for the purposes provided for therein; that the Leavenworth Company, prior to 1867, accepted the terms of the treaty and agreed to purchase the unallotted lands of the Delawares and to pay for them and the improvements thereon in accordance therewith; and that all the rights of the company in and to the lands and its liability for the lands and improvements, and all the rights and liabilities of its grantee, successor and assignee, the Union Pacific Railway Company, were fixed by the terms of said treaties, and that the Leavenworth Company, and its grantee, successor and assignee, the Union Pacific Railway Company, took the lands " subject to the conditions set forth in said treaties as to the payment therefor and as to the payment for said improvements thereon"; that the United States on October 20, 1860, appointed three commissioners to inspect and appraise the value of the land and improvements which the Leavenworth Company had become entitled to purchase, and they appraised the improvements at the value of $9534.25, and returned the appraisement, a schedule of which was made part of the petition. But at the time of that appraisement and of the purchase of the lands by the Leavenworth Company there were other improvements not included, which were afterwards appraised at the sum of $1181.50, and an itemized statement of these improvements was attached.

The United States further averred that the Leavenworth Company was unable to carry out the terms of the purchase of the lands and improvements and pay for the same as provided for in the treaty, and that afterwards a further treaty was made and entered into on or about July 2, 1861, ratified August 6, 1861, which in terms referred to the provisions for the sale of the lands and improvements in the prior treaties, by which last mentioned treaty it was provided that the

Leavenworth Company might execute its bonds with interest coupons attached, the principal sum to be $286,742.15, and execute a mortgage on one hundred thousand acres of land, as set forth in a letter of the Commissioner of Indian Affairs to the Secretary of the Interior, dated May 29, 1861, said mortgage to be conditioned for the payment of the bonds, both principal and interest, the bonds and mortgage being executed by the company in lieu of the payment previously provided for; but no provision was made in the last mentioned treaty for any change in the time or manner of paying for said improvements, and the bonds and mortgage were executed to secure the payment of the purchase price of the lands only, exclusive of the value of the improvements, the amount whereof was not included in the mortgage.

It was also averred that through changes in the name of the Leavenworth Company, and through a consolidation by and with other railroad companies, the Union Pacific Railway Company succeeded to all the franchises, property rights and interests of the said Leavenworth Company, and became and was subject to all the liabilities of that company under and by virtue of the said several treaties, and under and by virtue of the purchase of said Delaware Indian lands and the improvements thereon; that thereafter, by the terms of the treaty entered into on the 4th day of July, 1866, which treaty was ratified on or about the 26th day of July, 1866, in article first thereof it was provided "that the United States shall secure and cause to be paid to said Indians the full value of all that part of their reservation, with the improvements then existing on the same, heretofore sold to the Leavenworth, Pawnee and Western Railroad Company, according to the terms of a treaty ratified August 22, 1860, and supplemental treaties, and in accordance with the conditions, restrictions and limitations thereof."

That thereby plaintiffs became and were sureties for the payment of the value of said improvements, and trustees for the Delaware Indians to collect and dispose of the money as provided therein; and that neither the Leavenworth Company nor any of its assignees or successors, nor the Union Pacific

Railway Company, nor its receivers, defendants herein, have paid for said improvements, and that they remain due and wholly unpaid by defendants.

That by an act of Congress, approved July 13, 1892, there was appropriated and paid to the Delaware Indians the sum of $10,715.75, which sum the United States paid to those Indians as sureties under the treaties and in discharge of the trust created thereby.

And plaintiffs said that by the terms of the treaties and by the acceptance thereof by the Leavenworth Company and its grantee, successor and assignee, the Union Pacific Railway Company, the latter became and was liable to plaintiffs, as sureties and trustees, for money paid out and expended on behalf of defendants for said improvements in the sum of $10,715.75, which sum, together with interest thereon from May 30, 1860, was now due and wholly unpaid.

The second count averred that by virtue of the treaties mentioned in the first count, the Leavenworth Company became entitled to a right of way across the Delaware Reservation, and across the lands subsequently allotted in severalty to the Delawares on payment of a just compensation therefor; that the United States under the treaties became trustees for the Delawares to collect and account for the amount due them for such right of way and the sureties of the railroad companies for the payment of the same: That the Leavenworth Company under these treaties laid out a right of way and constructed a railroad over and across the reservation and over and across certain parcels of land allotted in severalty to Delaware Indians, and thereby became liable to the United States as trustees for the Delawares for the damages thereby sustained by the latter; that a reasonable compensation for the right of way across the allotted lands amounted to $28,959.41, which amount was ascertained by an appraisement by a commission appointed under the treaty; that the Union Pacific Railway Company was the successor of the Leavenworth Company, and liable for the amount due the Indians for the right of way; that the amount specified was appropriated and paid the Delaware Indians by the United States under the act of

July 13, 1892, as sureties, and was due from the railway company.

To these counts demurrers were sustained by the Circuit Court and judgment entered in favor of defendants. The case was then carried to the Circuit Court of Appeals for the Eighth Circuit and that court certified to this court the two counts, the demurrers, and the judgment thereon, and its desire for instruction " upon the following questions and propositions of law arising upon the record in such cause, to the end that it may properly decide said cause :

" First. Upon the facts stated in the first and second counts of said petition, is the United States entitled to recover from the Union Pacific Railway Company, or the receivers thereof, the whole or any part of the sum of $10,715.75, heretofore paid by the United States to the Delaware Indians, pursuant to the act of Congress of July 13, 1892, c. 164, 27 Stat. 120, 126, for improvements upon lands sold to the Leavenworth, Pawnee and Western Railroad Company ?

" Second. Upon the facts stated in the first and second counts of said petition, is the United States entitled to recover from the Union Pacific Railway Company, or the receivers thereof, the whole or any part of the sum of $28,954.41, heretofore paid by the United States to individual members of the tribe of Delaware Indians, pursuant to the provisions of the act of Congress of July 13, 1892, for and on account of right of way through allotted lands belonging to members of said tribe, which right of way was secured by the Leavenworth, Pawnee and Western Railroad Company, in accordance with the concluding clause of article 3 of a treaty concluded with the tribe of Delaware Indians on May 30, 1860 ?

" Third. Upon the facts stated in the first and second counts of said petition, were the demurrers thereto properly sustained ? "

*Mr. Solicitor General* for plaintiffs in error.

*Mr. John F. Dillon* for defendants in error. *Mr. A. L. Williams* and *Mr. Harry Hubbard* were on his brief.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

It is settled that the certification provided for in sections five and six of the Judiciary Act of March 3, 1891, c. 517, 26 Stat. 826, is governed by the rules laid down in respect of certificates of division under the Revised Statutes. *Columbus Watch Company* v. *Robbins*, 148 U. S. 266; *Maynard* v. *Hecht*, 151 U. S. 324; *Graver* v. *Faurot*, 162 U. S. 435; *Cross* v. *Evans*, 167 U. S. 60.

By those rules, as repeated in these cases from prior decisions, "each question had to be a distinct point or proposition of law, clearly stated, so that it could be distinctly answered without regard to the other issues of law in the case; to be a question of law only, and not a question of fact, or of mixed law and fact, and hence could not involve or imply a conclusion or judgment upon the weight or effect of testimony or facts adduced in the case; and could not embrace the whole case, even where its decision turned upon matter of law only, and even though it was split up in the form of questions." *Fire Insurance Association* v. *Wickham*, 128 U. S. 426; *Dublin Township* v. *Milford Savings Institution*, 128 U. S. 510.

The questions propounded in this certificate do not present distinct points or propositions of law, clearly stated, so that each could be distinctly answered without regard to the other issues of law involved, and they obviously bring the whole case up for consideration and disposition.

Elaborate argument on behalf of the Government was made at the bar, dealing with the Delaware treaties of 1831, 1854, 1860, 1861 and 1866, and the construction of various provisions thereof; with the construction of the Pacific Railroad act of July 1, 1862, c. 120, 12 Stat. 489; and also with the legislation in relation to the incorporation of the Leavenworth, Pawnee and Western Railroad Company; its change of name; and consolidation with other railroad companies, under the name of the Union Pacific Railway Company. Laws Kansas, 1855, c. 86, p. 914; Act of July 2, 1864, c. 216, 13 Stat. 356; Resolution of March 3, 1869, 15 Stat. 348; Act of March 3, 1869, c. 127, 15 Stat. 324.

Defendants in error contended that the petition was fatally defective in respect of any ground of liability for the improvements; that there was no sale of the improvements separate from the lands; that the stipulated patent carried title to the improvements with the lands; that by section two of the Pacific Railroad act of July 1, 1862, the United States granted the right of way through the reservation and undertook to extinguish the Indian title; that the grant was of a free right of way, and the United States were estopped by it from maintaining the second cause of action; that this question was *res judicata* by the judgment of the Supreme Court of Kansas in *Grinter v. Kansas Pacific Railway*, 23 Kansas, 642; that the line of the Kansas Pacific Company upon the right of way in question was not the line of the Leavenworth, Pawnee and Western Railroad Company or its successor, but of an independent corporation created by an act of Congress; and that even on the theory of the Government the defence of laches and limitations was available and formed a complete bar.

To answer the questions certified would require us to consider the several matters thus pressed on our attention; to pass upon questions of law not specifically propounded; and to dispose of the whole case. It follows that the certificate is insufficient under the statute.

*Certificate dismissed.*