WILLIAM J. MOXLEY v. HERTZ, Internal Revenue Collector.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1911.)

No. 1,537.

1. INTERNAL REVENUE (§ 22*)—REGULATIONS—ADOPTION—COMMISSIONER OF INTERNAL REVENUE—AUTHORITY.

Under Oleomargarine Act Aug. 2, 1886, c. 840, § 20, 24 Stat. 212 (U. S. Comp. St. 1901, p. 2234), authorizing the Commissioner of Internal Revenue, with approval of the Secretary of the Treasury, to make all needful regulations to carry the act into effect, the treasury officials may not by regulation so construe the act as to nullify its provisions as legally interpreted.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 22.*]

2. INTERNAL REVENUE (§ 16*)—OLEOMARGARINE—ARTIFICIAL COLORATION—TREASURY REGULATIONS.

Oleomargarine Act Aug. 2, 1886, c. 840, § 2, 24 Stat. 209 (U. S. Comp. St. 1901, p. 2228), permits the use of palm oil in the manufacture of oleomargarine as a "statutory ingredient," and section 8, 24 Stat. 210, c. 840 (U. S. Comp. St. 1901, p. 2231), as amended by Act May 9, 1902, c. 784, § 3, 32 Stat. 194 (U. S. Comp. St. Supp. 1909, p. 864), imposes a tax of 10 cents a pound on oleomargarine containing artificial coloration, but provides that oleomargarine "free from artificial coloration" shall be taxed at one-fourth of one cent a pound. By treasury regulations promulgated June, 1902, it was provided that if butter free from artificial coloration or any other of the compounds that might be legally used in the manufacture of the finished product has naturally a shade of yellow, in no way produced by artificial coloration, and through its use the finished product looks like butter of any shade of yellow, the product shall be taxed at one-fourth of a cent a pound as free from artificial coloration. Held, that where a small percentage of palm oil was used in the manufacture of oleomargarine, its sole purpose being to color the substance to represent the color of butter, though the oil was itself free from artificial coloration, its use did not render the product subject to the lower rate of taxation, since the regulation, if so construed, would be invalid as in excess of the jurisdiction of the treasury officials.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 16.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by William J. Moxley, a corporation, against Henry L. Hertz, Internal Revenue Collector, to recover revenue tax on oleomargarine. From a judgment for defendant (173 Fed. 728), plaintiff brings error. Affirmed.

John Maynard Harlan and Lewis W. McCandless, for plaintiff in error.

Edwin W. Sims and William H. Medaris, for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge. Plaintiff in error paid under protest a revenue tax of 10 cents a pound on certain oleomargarine. Claiming that the proper rate was one-fourth of a cent, he began this action against the collector for the difference. After an adverse judgment in the Circuit Court (173 Fed. 728), the case was brought here on a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

writ of error. We certified to the Supreme Court three questions of law, to the first of which only an answer was given. Moxley v. Hertz, 216 U. S. 344, 30 Sup. Ct. 305, 54 L. Ed. 510. At the present session counsel were heard regarding what decision should be made in view of that answer.

Citing Chicago, B. & Q. R. Co. v. Williams, 205 U. S. 444, 27 Sup. Ct. 559, 51 L. Ed. 875, Hallowell v. United States, 209 U. S. 101, 28 Sup. Ct. 498, 52 L. Ed. 702, The Folmina, 212 U. S. 354, 29 Sup. Ct. 363, 53 L. Ed. 546, to the effect that the Supreme Court has no jurisdiction upon certified questions of law to direct what disposition shall be made of the case as a whole, plaintiff in error properly asserts that upon us rests the responsibility of making a decision.

In the oleomargarine in question, manufactured and taxed in 1903, palm oil was a constituent to the extent of one-half of 1 per cent. of the total compound. Palm oil, under section 2 of the act (Act Aug. 2, 1886, c. 840, 24 Stat. 209 [U. S. Comp. St. 1901, p. 2228]), was a permissible "statutory ingredient." It was wholesome and readily digestible; and it had been successfully employed in the making of oleomargarine prior to 1902. Section 8 (24 Stat. 210, c. 840 [U. S. Comp. St. 1901, p. 2231] as amended by Act May 9, 1902, c. 784, § 3, 32 Stat. 194 [U. S. Comp. St. Supp. 1909, p. 864]) exacted generally a tax of ten cents a pound, but on oleomargarine "free from artificial coloration" the tax was limited to one-fourth of one cent a pound. Section 20 of the act provided:

"That the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, may make all needful regulations for the carrying into effect of this act."

In an intended pursuance of that authority, the following "general regulation" was promulgated in June, 1902:

"If in the production of oleomargarine the mixtures or compounds set out in the law of 1886 are used, and these compounds are all free from artificial coloration and no artificial coloration is produced by the addition of coloring matter as an independent and separate ingredient, a tax of one-fourth of 1 cent per pound only will be collected, although the finished product may look like butter of some shade of yellow. For example, if butter that has been artificially colored is used as a component part of the finished product oleomargarine (and that finished product looks like butter of any shade of yellow) as the oleomargarine is not free from artificial coloration, the tax of 10 cents per pound will be assessed and collected. But if butter is absolutely free from artificial coloration, or cotton seed oil free from artificial coloration, or any other of the mixtures or compounds legally used in the manufacture of the finished product oleomargarine has naturally a shade of yellow in no way produced by artificial coloration, and through the use of one or more of these unartificially colored legal component parts of oleomargarine the finished product should look like butter of any shade of yellow, this product will be subject to a tax of only one-fourth of 1 cent per pound, as it is absolutely free from artificial coloration that has caused it to look like butter of any shade of yellow."

"Yes" was the Supreme Court's answer to the question:

"With the oleomargarine caused 'to look like butter' by the use of natural palm oil as one of the ingredients—'a pure vegetable oil' named in the statute as an ingredient of oleomargarine—which not only gives the coloration

sought for the finished product, but otherwise (in some degree) improves the texture, quality. and healthfulness of the oleomargarine, can such use be denominated 'artificial coloration' within the terms and meaning of the statute referred to, fixing the rate of taxation?"

Plaintiff in error insists that a controlling question remains, which "has never been propounded to or answered by the Supreme Court either expressly or by implication." That question is stated thus:

"Was the trial judge right in undertaking at all to obtain a standard of 'artificial coloration' by construing section 8 of the act of May 9; 1902, or should he have accepted as conclusive. and have applied in the case at bar, the standard of 'artificial coloration' contained in the general regulation of June, 1902, promulgated by the officials, the Commissioner of Internal Revenue and the Secretary of the Treasury acting together, to whom Congress, by section 20 of the oleomargarine statutes had delegated the duty of determining authoritatively by general regulations from time to time when should constitute 'artificial coloration' of oleomargarine?"

Authority was given to the treasury officials to make "regulations" that would carry the act into effect, not "regulations" that would destroy or undermine the act or run counter to its provisions legally interpreted. So the inquiry is whether the claim that the general regulation of June, 1902, was in effect a statutory declaration that oleomargarine like that in question was "free from artificial coloration," is well founded or not. Looking to the case of Moxley v. Hertz, 216 U. S. 344, 30 Sup. Ct. 305, 54 L. Ed. 510, simply as a precedent, not as a mandate in this cause, and examining the opinion as any subordinate court might do, to ascertain the principles that led to the result announced, we find that the inclusion of a statutory ingredient whose effect in making the oleomargarine suitable for food is slight, unimportant, insignificant, and whose large, important, significant effect is to color the product in resemblance to butter, does not exempt the product from the greater tax. On page 356 (216 U. S., 30 Sup. Ct. 308 [54 L. Ed. 510]), of the above citation the Supreme Court said:

"We have so far considered this case on the authority of the Cliff Case [195 U. S. 159, 25 Sup. Ct. 1, 49 L. Ed. 139]. deeming it unnecessary to repeat the reasoning of the latter, as though the question was res integra. It may be well, however, to develop the argument of counsel somewhat further. It is presented in a summary way into the following syllogism:

" 'First Premise: Color due to the use of an authorized food ingredient, not artificially colored, is not artificial colorization. McCray Case [195 U. S. 27, 24 Sup. Ct. 769, 49 L. Ed. 78].

" 'Second Premise: Palm oil, being a vegetable oil, suitable for food, and its nature such as to make oleomargarine suitable for food, and being itself not artificially colored, is an authorized food ingredient. (Cliff Case.)

" 'Conclusion: Therefore color due to the use of palm oil is not artificial coloration.'

"The premises and conclusion are assumed by ignoring, not by following, the cases cited to support them. The error arises by making the term 'authorized food ingredient' unqualified and by disregarding what the Cliff Case makes essential. The quality of suitableness for food of an ingredient is made determinative, and wholly determinative, disregarding its quantity, its relation, and proportion to other ingredients, and this counsel, indeed, contends for and is the proposition presented in the second question certified. But the contention contravenes the rule in the Cliff Case, where the distinction was made between the mere addition of an authorized food ingredient and its service in the compound for something more substantial than coloration. We now repeat it. Any other rule would give too easy a way to evade

the statute and make its purpose yield, not to what is essential to the manufacture of oleomargarine, but what is nonessential, and render a law which was intended to prevent deception an easy means to accomplish it."

It·follows, we believe, either that the general regulation of June, 1902, must be deemed invalid, or that it must be construed as meaning that oleomargarine is not free from artificial coloration, unless the authorized ingredient which gives the color is itself free from artificial coloration and is used in substantial quantity in relation to the other ingredients—for the general regulation aforesaid was included in the certificate as one of the facts which the Supreme Court said failed to "take the case out of the ruling in the Cliff Case."

Finally it is contended that, under the principles involved in United States v. 1,412 Gal. of Distilled Spirits, 10 Blatchf. 428, Fed. Cas. No. 15960, Coopersville Creamery Co. v. Lemon, 163 Fed. 145, 89 C. C. A. 595, and United States v. Realty Co., 163 U. S. 427, 16 Sup. Ct. 1120, 41 L. Ed. 215, even if the general regulation of June, 1902, was repugnant to the statute, the government should be held estopped from claiming the higher rate. One answer might be that plaintiff in error was not entitled to give to the general regulation a construction that would afford "an easy means to accomplish the deception that the law was intended to prevent." But whatever force there may be in the contention is spent, it seems to us, against what we find (perhaps erroneously) to be an impregnable wall of controlling precedents.

The judgment is therefore affirmed.